CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 13 2013

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONELL J. BLOUNT, SR., | ) | CASE NO. 7:12CV00476 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| SGT. LARRY ROSS COLLINS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Donell J. Blount, Sr., a Virginia inmate incarcerated at Red Onion States Prison and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Blount claims that the defendant prison officials, Sgt. Travis Hale, Unit Manager Michael Younce, Lt. Christopher Gilbert, and Sgt. Larry Ross Collins, used excessive force against him on two separate occasions by applying OC gas (pepper spray) into his cell and by holding him in 5-point restraints for nine hours without breaks and without due process. Upon review of defendants' motions and Blount's responses thereto, the court concludes that the motions for summary judgment must be denied in part. The remaining claims will be set for trial before a jury in the Big Stone Gap division of the court.

## Background

Given the procedural posture of this case, the facts are set forth by viewing the evidence in the record and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, as the nonmoving party.[1] Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

---

[1] Blount offers much the same version of events in his verified complaint and subsequent affidavits. (Blount Affidavit 1, ECF No. 31-1; Blount Affidavit 2, ECF No. 41-1.)

In his first claim, Blount sues Sgt. Hale for maliciously spraying him with OC gas on June 22, 2012. That day, while Hale was talking with inmates near Blount's cell about dirty water from another inmate's overflowing toilet that had flooded into the pod, Hale allegedly turned and asked Blount to return a razor and mirror that Hale had allowed Blount to possess in his cell in violation of security policies.[2] Blount told Hale that he "wasn't going to give him shit until he cleaned the pod." (Blount Affid. 2, May 31, 2013.) Hale said Blount would go without dinner. Blount then covered the window of his cell door and demanded to see the lieutenant.

Hale allegedly told Blount, "Oh you want to buck on the razor and mirror and get me in trouble and cover your window. I got something for your dumb ass." (Id., at 2-3.) Without first ordering Blount to uncover the window or getting authority from the medical staff, Hale opened the tray slot in Blount's door and sprayed OC gas into Blount's face and left arm.[3] Blount states that the pepper spray made his skin, eyes, and nose felt like they were on fire for hours. Even after officers allowed him to decontaminate himself in the shower, Blount's skin burned, and his "breathing became restricted ([he] is asthmatic) with intense pressure in [his] chest." (Id., at 3.)

In his second claim, Blount asserts that Defendants Younce, Gilbert, and Collins used excessive force against him on August 10, 2012, by placing and holding him in 5-point restraints for 9 hours. That day, Blount noticed what he thought was smoke coming through the vents in his cell block, which triggered his asthma. He asked to be moved temporarily to another pod, but Younce refused to move him. Blount covered the cell door window and "started flushing the

---

[2] Hale states that he has no knowledge of Blount's possessing a razor and mirror and that inmates are prohibited from possessing such items.

[3] Hale reported to investigators that he had seen Blount striking at the sprinkler with a shoe and sprayed him to prevent such damage to state property. Blount insists he would never have tried to break a sprinkler, because the water would have destroyed precious family pictures and legal documents in his cell. Blount states that he told Hale he had flushed the razor and mirror, but later returned these items to Lt Blevins, as documented by a video recording.

2

toilet to flood" his cell. (Blount Affid. 1, at 1.) Officers immediately cut off the water supply to the cell.

When Collins came to his cell, Blount uncovered the window and explained how the smoke was making it hard for him to breathe. The officers moved Blount to another pod, where they placed him on strip cell status in his boxer shorts and shower shoes. Collins and Younce then "accused [Blount] of scratching the [strip cell] window, and put [him] in 5-point restraints naked . . . on a plastic covered mat[t]ress with a blanket on [his] lap."[4] Id. Blount denies that he scratched the window and states that he had no metal object with which to do so.

Blount remained in 5-point restraints from approximately 11:00 a.m. to 8:18 p.m. without any breaks, which caused him to "suffer extreme cramps and pain." (Id. at 3.) Collins allegedly positioned the chest strap so that its buckle cut painfully into Blount's arm, and the officers never offered or provided him a break to eat or use the toilet, although he was not physically or verbally disruptive. Blount told Collins and Gilbert he was having difficulty breathing and needed to use his inhaler, but no one provided the inhaler to him.[5] Blount also states that he told these officers he was having "extreme cramps/pain, chills caused by being soaked in urine [and sweat from the plastic bed with] the air conditioning blowing on" him, and "repeatedly asked to be let out" for a break from the restraints to use the toilet and wash himself.[6] Id. at 4.

---

[4] Defendants Collins and Gilbert state that they saw Blount scratching the window with a small metal splinter and that such scratches create a security risk by obscuring officers' view into the cell. They also state that Blount threatened to damage other windows and the cell itself. After removing Blount from the strip cell, officials could not find the object used to inflict the scratch on the window.

[5] Gilbert states that he never heard Blount ask for his inhaler, and Collins states that Blount asked him about the inhaler, another officer gave it to Blount to use. The officers state that Blount refused offered breaks for meals, stating that he did not need to eat because he was fasting for Ramadan.

[6] Gilbert and Collins state that they never saw Blount lying in urine and that, according to the log book, officers offered Blount opportunities to use the toilet, but he refused.

When officers released Blount from 5-point restraints that evening, he complained to the nurse of chest pain, which eased when he used his inhaler, and of stiffness in his muscles and joints. Blount's back and shoulders were still stiff and painful the next day. Blount states that he was not given a hearing or other opportunity during or after the restraint period to challenge the use of these restraints and that he did not receive a disciplinary charge for scratching the door.[7]

Blount brought the present action against Hale, Younce, Collins, and Gilbert, seeking monetary damages and declaratory relief. In his complaint as amended,[8] he asserts that: (1) Hale used excessive force against Blount on June 22, 2012; (2) Younce, Collins, and Gilbert used excessive force against Blount on August 10, 2012; and (3) Younce, Collins, and Gilbert deprived Blount of due process before placing him in 5-point restraints on August 10, 2012.[9] Defendants have filed motions for summary judgment supported by affidavits, asserting that Blount has not forecast evidence to support either the objective or subjective component of his Eight Amendment claims. They also contend that they are entitled to qualified immunity. Blount has responded to both motions, making the matter ripe for disposition.

## Discussion

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[7] Collins states that he placed two institutional charges against Blount after the August 10, 2012 incident — for destruction of state property and flooding. Because these charges were not served on Blount in a timely manner, they were later dropped.

[8] In the original complaint, Blount listed the wrong date for one incident, but later corrected it by amendment.

[9] Blount also referred to John Doe defendants in his 5-point restraints claim and his due process claim. By order entered December 4, 2012, the court notified plaintiff that all claims against these defendants would be dismissed without prejudice if he failed to identify them within 120 days from October 5, 2012, and failed to allege facts regarding conduct undertaken by each defendant in violation of his rights. Blount failed to identify these defendants or to allege specific claims against them. Therefore, the court will dismiss all claims against the John Doe defendants without prejudice. Fed. R. Civ. P. 4(m); 28 U.S.C. § 1915(e)(2)(B).

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (omitting quotation).

### A. Excessive Force

Blount's first two claims are both properly viewed as excessive force claims under the Eighth Amendment to the United States Constitution, which prohibits "cruel and unusual punishments." U.S. Const., Amend. VIII. The Eighth Amendment does not prohibit all application of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). The court conducts an objective inquiry — whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry — whether a specific prison official

"acted with a sufficiently culpable state of mind." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (omitting internal quotations).

The objective component focuses on "the nature of the force," which must be "nontrivial," Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no enduring injury." Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. Hudson, 503 U.S. at 9.

In addressing the subjective component, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 5. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. While the court must afford deference to prison administrators' "discretion" regarding necessary measures to maintain security, that discretion "does not insulate from review actions taken in bad faith and for no legitimate purpose." Id. at 322. If "the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," and it presents a factual issue as to whether the force was nontrivial, the case must go to trial. Id.

**Claim 1: Use of pepper spray on June 22, 2012**

It is well established that prison officials violate the Eighth Amendment when they use pepper spray against an inmate in "quantities greater than necessary or for the sole purpose of infliction of pain." Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (omitting citations). Blount

states that the pepper spray caused breathing trouble, chest pain, and a painful burning sensation in his eyes and nose and on his skin that lasted for some time, even after he attempted decontamination in the shower. The court finds that the pain Blount allegedly suffered from the pepper spray in this case is sufficient to present a genuine issue of fact for trial on the objective component of this excessive force claim.[10] Id.

The court also finds that Blount presents genuine issues of fact as to the subjective component of the claim. Blount states that Hale had previously threatened to "gas" him without warning. See Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (observing that comments or actions by a defendant which indicate a malicious motive are relevant to the subjective inquiry in an Eighth Amendment claim). When Blount would not return the razor and mirror Hale had allowed him, Hale allegedly grew angry, fearing he would be disciplined, and lashed out verbally at Blount. Blount states that while he was confined in his cell, merely asking to speak with another officer and not posing any immediate threat, Hale applied pepper spray without any prior verbal warning or medical approval, to harm Blount. Taken in the light most favorable to Blount, this evidence permits a reliable inference that Hale maliciously applied pepper spray to inflict pain on Blount. See Tedder v. Johnson, __ F. App'x __, No. 12-6687, 2013 WL 2501759, at *3-5 (4th Cir. June 12, 2013) (reversing grant of summary judgment on inmate's claim that officer pepper sprayed him for failing to obey order to return to his unit, where inmate posed no threat).

Hale disputes Blount's account. He denies any knowledge of the mirror and razor and asserts Blount had threatened to flood his cell. Hale states that he saw Blount attempting to

---

[10] See Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir.2008) (observing that pepper spray is designed to disable the person sprayed "by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx" (internal quotation marks omitted)), overruled on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

break the sprinkler, sought and received approval from medical staff to use pepper spray, and sprayed the substance into Blount's cell to prevent him from damaging state property. Assuming the truth of Blount's sworn statements, however, as the court must do at this stage of the proceedings, a reasonable fact finder could conclude that Hale wantonly used nontrival force to cause Blount harm, rather than as part of a good faith effort to restore order and discipline and prevent destruction of the sprinkler. Whitley, 475 U.S. at 320-21.

These same disputes of fact preclude Hale's asserted defense of qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). When resolution of the qualified immunity question and the case itself both depend upon a determination of what actually happened, summary judgment on grounds of qualified immunity is not proper. Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995). Accordingly, the district court should not grant summary judgment where "there remains any material factual dispute regarding the actual conduct of the defendants." Id. For the reasons stated, the court denies Hale's motion for summary judgment.

**Claim 2: Use of 5-point restraints on August 10, 2012**

The use of 4- or 5-point restraints in a good faith effort to control prison inmates is not per se unconstitutional. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996); Sadler v. Young, 325 F.Supp.2d 689, 702 (W.D. Va. 2004), rev'd on other grounds, 118 F. App'x 762 (4th Cir. 2005). On the other hand, lengthy restraint of this magnitude can satisfy the objective

8

component of an excessive force claim.[11] See Williams, 77 F.3d at 762, 762 n. 2 (noting that because "[m]ankind has devised some tortures that leave no lasting physical evidence of injury," "courts should be wary of finding uses of force that inflict 'merely' pain but not injury" to be outside the scope of Eighth Amendment protection); Sadler, 325 F.Supp.2d at 704 (finding "physical and mental pain" of having all limbs and chest restrained for 2 days was sufficient to meet objective component).

Simply stated, there are limits to how long a prisoner can be constitutionally restrained: "[When] the immediacy of the disturbance [i]s at an end . . . the unnecessary infliction of continued pain throughout a prolonged time period clearly supports an inference that the guards were acting to punish, rather than to quell the disturbance." Williams, 77 F.3d at 765 (citing United States v. Cobb, 905 F.2d 784, 789 (4th Cir.1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective.") (quotations omitted)). Thus, application and/or continued use of 5-point restraints on an inmate who does not currently pose any threat to security or discipline can be violative of the Eighth Amendment even when that inmate does not suffer significant physical injuries. Sadler, 325 F.Supp.2d at 704; Davis v. Lester, 156 F.Supp.2d 588, 594 (W.D. Va. 2001).

If the court credits Blount's version of events over defendants' evidence where disputes arise, as required at this stage of the case, he states the elements of an excessive force claim as to his placement and continuation in the restraints. Blount's evidence is that officers had successfully used other control measures to address his prior outbreaks on August 10, 2012, and

---

[11] In Blount's case, the defendants focus their summary judgment argument on the subjective prong of the excessive force analysis under Wilkins. They do not argue that use of 5-point restraints to immobilize Blount for 9 hours constitutes mere trivial force. Thus, like the defendant officers in Williams, "they apparently concede that there is at least an issue of fact with regard to the objective component." 77 F.3d at 762.

9

had him safely confined in a strip cell. He asserts that although this situation did not present an immediate security threat or need for additional force, Collins and Younce allegedly used a false accusation that Blount had scratched the window to create an excuse to maliciously inflict pain on him through the use of 5-point restraints. Because a reasonable jury could find from this evidence that the officers applied the restraints maliciously rather than in a good faith effort to restore or preserve order, the court finds that Blount has satisfied the Whitley factors as to this aspect of his excessive force claim.

Blount's evidence also permits a reasonable inference that defendants continued the restraints for 9 hours without breaks, merely to punish Blount rather than in a good faith attempt to restore order. Blount states that he was not physically or verbally disruptive or threatening at any time while in restraints and that the restraints caused him pain. He asserts that the chest restraint cut into his arms from the beginning, that immobilization in an air conditioned room caused him to suffer from chills, stiffness from not being able to change position, and soreness lasting into the next day, breathing trouble from being deprived of his inhaler, and the discomfort and indignity of having no toilet access and urinating on himself.

Defendants offer evidence in dispute of Blount's account — that Blount scratched the window and threatened officers, continued to make verbal threats while in restraints, received his inhaler, and refused breaks offered to him. Comparing the two versions of events, the court finds that genuine issues of material fact remain in dispute under the factors in Whitley as to the subjective component of Blount's claim that the continued use of 5-point restraints was excessive force. These same disputes of fact preclude defendants' argument that they are entitled to summarily judgment on the ground of qualified immunity. Buonocore, 65 F.3d at

359. For these reasons, the court denies defendants' motion as to Blount's 5-point restraints claim of excessive force.[12]

### B. Due Process

Blount complains in Claim 3 that before, during, and after the restraint period, officers did not provide him with notice or a chance to be heard regarding the deprivation of his liberty through the use of the 5-point restraints. Defendants state that Blount's own actions made procedural protections impossible before and during the restraint period. Finding material disputes as to this claim, the court denies summary judgment on Blount's due process claims.[13]

The Due Process Clause of the Fourteenth Amendment requires states to provide procedural rules to protect persons against mistaken deprivations of life, liberty, or property. Carey v. Piphus, 435 U.S. 247, 259 (1978). State prison policies may create a constitutionally protected liberty interest when they "impos[e] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484-86 (1995).

Defendants concede that 5-point restraints arguably impose an atypical and significant hardship under Sandin, giving inmates a protected liberty interest in avoiding such restraints, and the court agrees. See Faison v. Damron, Case No. 7:00CV00739, 2002 WL 467145 (W.D. Va. 2002) (citing Williams, 77 F.3d at 769). Defendants assert, however, that procedural protections for Blount before or during the restraint period were not possible on August 10, 2012, because

---

[12] Defendants also address Blount's 5-point restraints claim under the deliberate indifference standard applied to allegations of harmful prison conditions that violate the Eighth Amendment. Blount neither phrased his claim in such terms in the complaint nor responded to defendants' deliberate indifference arguments. Moreover, defendants assert that the restraints were applied and maintained in response to Blount's continued disruptive behavior. For these reasons, the court construes Blount's 5-point restraints claim as asserting only excessive force and not deliberate indifference. See Hudson, 503 U.S. at 6 ("the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance").

[13] Because the court denies defendants' motion for summary judgment, the court also dismisses as moot Blount's motion to strike/motion for sanctions for allegedly submitting defective exhibits.

11

officers placed Blount in 5-point restraints in response to his ongoing disruptive and destructive behavior. Williams, 77 F.3d at 769-70 (recognizing that when prison security emergency precludes predeprivation process, post-deprivation procedural protections are adequate). They also assert that no hearing was possible during the restraint period, because that period ended as soon as officers determined that Blount's behavior was sufficiently compliant for him to be released.

Defendants may succeed in proving their factual assertions at trial. Blount's evidence, however, taken in the light most favorable to him, permits a reasonable inference that he did not scratch the window or exhibit disruptive behavior that prevented officers from giving him notice and a chance to be heard before placing and holding him in 5-point restraints for 9 hours. See Zinermon v. Burch, 494 U.S. 113, 132 (1990) ("[W]here the State feasibly can provide a predeprivation hearing before [a deprivation of a liberty interest], it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the [deprivation]."). If Blount so proves, then a post-deprivation disciplinary hearing could not satisfy due process requirements.

Furthermore, defendants' qualified immunity defense fails on this claim. The right to due process in conjunction with 5-point restraints was clearly established in 2012, see Davis, 156 F.Supp.2d at 594 (denying qualified immunity to prison officials regarding claim they gave no notice or hearing before placing inmate in 5-point restraints for 48 hours). Finding genuine issues of material fact in dispute, the court denies defendants' motion for summary judgment as to Blount's claim that his placement and continuance in 5-point restraints deprived him of a constitutionally protected liberty interest without due process.

To the extent that Blount claims that defendants denied him any formal charge or hearing after the restraint period, the court grants defendants' motion. The court finds no factual issue in dispute that the officers brought disciplinary charges against Blount for his behavior on August 10, 2012, which was not timely served on him. If these charges had been served, Blount would have had notice and a hearing before receiving any disciplinary penalty on the charge. Because of the service problem, however, the officers dropped the charges in keeping with the procedural protections of the prison's disciplinary scheme.

## Conclusion

For the stated reasons, the court denies defendants' motions for summary judgment as to Blount's Claims 1 and 2, alleging use of excessive force and Claim 3, alleging that defendants deprived him of due process when they placed and maintained him in 5-point restraints without notice or a hearing. The court grants plaintiff's motion for a jury trial as to these claims. The court grants summary judgment for the defendants as to Blount's claim that he was denied due process after his release from 5-point restraints. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

ENTER: This 13th day of August, 2013.

_____
Chief United States District Judge